IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Charles M. Lord, | ) | |
| | ) | Civil Action No. 1:10-1644-MBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| Kimberly-Clark Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

On May 21, 2010, Charles M. Lord ("Plaintiff") filed an action in the Court of Common

Pleas for Aiken County, South Carolina, against his former employer, Kimberly-Clark

Corporation ("Defendant").  ECF No. 1-1.  Plaintiff asserted a claim for breach of employment

contract, alleging that Defendant had forced him to retire in retaliation for a complaint he had

lodged against his supervisor.  *Id.*  Defendant removed the action to this Court on June 25, 2010,

and filed an answer on July 12, 2010.  ECF No. 1 & 7.  On March 21, 2011, Defendant filed a

motion for summary judgment.  ECF No. 24.  Plaintiff filed a response in opposition on May 9,

2011.  ECF No. 29.  Defendant filed a reply on May 19, 2011.  ECF No. 30.

## FACTS

The facts, construed in the light most favorable to Plaintiff, are as follows.  Defendant

Kimberly-Clark produces a variety of paper-based consumer products.  Defendant distributes a

"Code of Conduct" to employees addressing a variety of ethical concerns and "creat[ing] a

framework of ethical standards that all employees must operate within."  ECF No. 24-1 at 80.

The Code of Conduct contains a "Non-Retaliation Policy" stating:

1

> *You cannot lose your job* or your benefits, or be demoted, suspended, threatened, harassed, or discriminated against, for raising a Code of Conduct concern honestly or truthfully participating in a Company investigation. Reporting honestly means that you believe you are being truthful and accurate. If you believe someone is retaliating against you, please report it as you would a violation of the Code. All concerns about the Code and reports of retaliation will be fully investigated.

*Id.* at 81 (emphasis added). The Code of Conduct further states: "The Code of Conduct cannot possibly answer every question or ethical dilemma. If something does not seem right to you, ask your team leader or one of the other people listed in the Resources section." *Id.* at 82. The Code of Conduct also contains a disclaimer, located at the bottom of the table of contents and stating in non-capitalized, non-underlined text:

> The information in this Code of Conduct has been prepared as a guide to give a better understanding of Kimberly-Clark and its expectations for ethical conduct. However, the statements in this Code of Conduct are statements of principles and do not constitute a contract of any kind or an inflexible set of rules. Management reserves the right, at all times, to take any action deemed by it to be in the best interests of Kimberly-Clark.

*Id.* at 78.

Plaintiff was employed by Defendant for twenty-seven years, from 1982 to 2009. His final job description was "Reliability Process Leader" at Defendant's Beech Island plant. ECF No. 29 at 7. Plaintiff was responsible for recording his time worked each day, and was paid on an hourly basis. ECF No. 24-1 at 4. Throughout his employment, Plaintiff had "[no] obvious problems" in his work record until an incident on March 20, 2009. ECF No. 29-2 at 9-10. Plaintiff's direct supervisor from October 2007 until his retirement was Frank Freer. ECF No. 24-1 at 6 & 46-47. Shortly after becoming Plaintiff's supervisor, Mr. Freer began to call Plaintiff at night, during Plaintiff's off-work hours, on Plaintiff's company cell phone. *Id.* at 11-12. Mr. Freer frequently appeared to be intoxicated, using vulgar language and threatening

2

retaliation by himself and his supporters if Plaintiff did not comply with his wishes.  *Id.* at 11-14.

Plaintiff asked Mr. Freer to stop making these calls and complained to co-workers.  *Id.* at 16-17.

In February or March 2009, Plaintiff spoke to Bob Cross, the site manager, because Mr. Freer's

calls had not stopped.  *Id.* at 18.  Plaintiff asked Mr. Cross for help with the matter but also

requested that Mr. Cross not reveal the complaint to Mr. Freer.  *Id.* at 18-19 & 22.  Plaintiff did

not specifically state that he was making a complaint based on the Kimberly-Clark Code of

Conduct.  ECF No. 24-1 at 51.  Mr. Cross told Plaintiff that "he would take care of it," and

afterwards asked Plaintiff from time to time whether things were getting better.  *Id.* at 24 & 26.

Plaintiff's complaint was eventually revealed to Mr. Freer in Mr. Freer's performance

review.  ECF No. 29-4 at 5.  Mr. Freer confronted Plaintiff about his complaint; although

Plaintiff states that Mr. Freer was "angry" and "wanted [Plaintiff] to know that he knew," Mr.

Freer did not threaten Plaintiff.  ECF No. 24-1 at 19-21.  Plaintiff alleges that after this point Mr.

Freer began to retaliate against him by imposing additional responsibilities.  Plaintiff did not

complain again to Mr. Cross because he "felt so betrayed that [Mr. Cross] would have spoke[n]

to [Mr. Freer]."  ECF No. 29-1 at 4 & 7-8.

On March 24, 2009, Mr. Freer informed Nathan Gallaher, Distribution Team Leader and

Mr. Freer's direct supervisor, about a problem with Plaintiff's time reporting.  ECF No. 29-2 at

3-4.  Plaintiff had reported that he worked on March 20, 2009, when he had in fact been out

sick.  ECF No. 29-1 at 10-11.  Mr. Gallaher had no reason to suspect that the discrepancy was

anything but an honest mistake, and gave Plaintiff a verbal warning.  ECF No. 29-2 at 6-7.

On June 2, 2009, a "smirking" Mr. Freer made a comment to Plaintiff about Plaintiff

"leaving a little early."  ECF No. 29-1 at 3-4.  On June 3, 2009, Mr. Gallaher asked Plaintiff to

come to Mr. Gallaher's office to meet with him and Hilary Turner-Woolley, a human resources

representative.  ECF No. 24-1 at 31-33.  Mr. Gallaher and Ms. Turner-Woolley informed

Plaintiff that there were discrepancies over the past three months between the times Plaintiff

claimed to have worked and Plaintiff's entry and exit times logged at the facility gate.  *Id.* at 32.

Mr. Gallaher analyzed eight weeks of data, including Plaintiff's Microsoft Outlook calendar, and

determined that during that time there was a discrepancy of sixteen hours between the hours

reported by Plaintiff and the hours Plaintiff actually worked.  ECF No. 24-2 at 5-7; ECF No. 24-

3 at 3.  Plaintiff claims that he "was blindsided and overwhelmed by the challenge to his

integrity after giving 27 years of exemplary service to his Employer," and that he "protested his

innocence and attempted to explain his job responsibilities, but he was not given any chance to

meet the charges against him."  ECF No. 29 at 8.  After this meeting, Mr. Freer called Plaintiff

and told Plaintiff, with a "smirk" in his voice, to clean information off his company laptop and

cell phone.  *Id.* at 9.

On June 4, 2009, Mr. Gallaher informed Plaintiff that his employment would be

terminated, and Plaintiff chose instead to retire.  ECF No. 24-1 at 39-40.  Plaintiff alleges that

Mr. Freer, who as Plaintiff's immediate supervisor was responsible for approving Plaintiff's

work time reports, orchestrated Plaintiff's termination in retaliation for Plaintiff's complaint

against him.  ECF No. 29-1 at 3.  Plaintiff was given no warning before the June 3, 2009 meeting

that his time would be reviewed, and therefore was not given adequate time or opportunity to

review the data or address the discrepancies.  ECF No. 29 at 9.

**STANDARD OF REVIEW**

4

To prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) he is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The facts and any inferences drawn from the facts should be viewed in a light most favorable to the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather he must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.

## DISCUSSION

A.     **Whether the Guarantees of Kimberly-Clark's Non-Retaliation Policy May Form the Basis of a Contract**

Defendant first argues that summary judgment should be granted because the language in the Kimberly-Clark Code of Conduct is not capable of forming a contract, as a matter of law. "South Carolina has long recognized the doctrine of employment at-will," which "allows either party to terminate the employment 'for any reason or no reason' without being subject to a claim for breach of contract."  *Grant v. Mount Vernon Mills, Inc.*, 634 S.E.2d 15, 19 (S.C. Ct. App. 2006).  "But when an employee's at-will status has been altered by the terms of an employee handbook, an employee, when fired, may bring a cause of action for wrongful discharge based on breach of contract."  *Hessenthaler v. Tri-County Sister Help*, 616 S.E.2d 694, 697 (S.C. 2005).  "To be enforceable in contract, general policy statements" in an employee handbook "must be definitive in nature, promising specific treatment in specific situations."  *Id.* at 698.

5

"[S]uch provisions must be stated in mandatory or promissory terms to create an issue of fact as to whether an implied contract exists." *Bagwell v. Fafard, Inc.*, 2007 WL 2022187 at *4 (D.S.C. July 11, 2007). Furthermore, "the handbook promise must restrict the right of an employer to discharge." *Lawrence v. Westinghouse Savannah River Co., Inc.*, 2005 WL 3968031 at *4 (D.S.C. March 31, 2005).

"If an employer wishes to issue an employee handbook or manual without being bound by it and with a desire to maintain the at-will employment relationship, the employer must insert a conspicuous disclaimer into the handbook." *Hessenthaler*, 616 S.E.2d at 697. Additionally, South Carolina Code section 41-1-110 declares that employee handbooks and related documents issued after June 30, 2004, will not create an express or implied contract if they are "conspicuously disclaimed," meaning that "a disclaimer . . . must be in underlined capital letters on the first page of the document." For handbooks or personnel manuals, the disclaimer must also be signed by the employee. *Id.* "An employee manual that contains promissory language and a disclaimer is 'inherently ambiguous,' and a jury should interpret whether the manual creates or alters an existing contractual relationship."[1] *Horton v. Darby Elec. Co., Inc.*, 599 S.E.2d 456, 460 (S.C. 2004). Stated differently, "[t]he issue of whether an employee handbook constitutes a contract should be submitted to the jury when the issue of the contract's existence is questioned and the evidence is either conflicting or is capable of more than one inference." *Hessenthaler*, 616 S.E.2d at 697.

---

[1]     It is not clear how this holding is affected by the 2004 statute, which seems to definitively state that a conspicuous disclaimer will prevent the document from altering the employment contract. Because this Court finds that the Code of Conduct disclaimer is not "conspicuous" as defined by the statute, as discussed below, it need not consider whether or when promissory language may nullify a conspicuous disclaimer.

The disclaimer in Kimberly-Clark's Code of Conduct is located at the bottom of the table of contents, which is at least arguably the "first page" of the document. ECF No. 24-1 at 78. The document was copyrighted in 2009, implying that it was distributed to Plaintiff after June 30, 2004. *See id.* at 104. However, the disclaimer is neither capitalized nor underlined, and therefore it does not meet the statutory definition of a "conspicuous disclaimer." The Court must therefore consider whether the Non-Retaliation Policy contains "mandatory" or "promissory" language, or promises "specific treatment in specific situations."

The majority of cases from the South Carolina Supreme Court and the District of South Carolina treat the question of whether an employee handbook contains mandatory or promissory terms as a question of law. In *Hessenthaler*, 616 S.E.2d at 696, the South Carolina Supreme Court reviewed an employee handbook with language stating that "[a]ll decisions, including hiring, training, and promotion, are made without regard to race, color, religion, national origin, sex, age, handicap, sexual preference, or any other protected status." After finding that the manual contained a conspicuous disclaimer, the court held that "this provision does not constitute a promise altering the at-will employment relationship" as a matter of law. *Id.* at 698. On the other hand, in *Small v. Springs Industries, Inc.*, 357 S.E.2d 452, 453-54 (S.C. 1987), the South Carolina Supreme Court dealt with an employee handbook and bulletin, apparently containing no disclaimer, that set out a four-step progressive discipline policy for terminating employees.[2] The court held that "[i]t was for the jury to decide whether the handbook, the bulletin, and the oral assurances [about the discipline process] constituted an employment contract." *Id.* at 454.

---

[2]    The case was on appeal after a jury had determined that the handbook and bulletin created an employment contract.

In *King v. Marriott International, Inc.*, 520 F. Supp. 2d 748 (D.S.C. 2007), the Honorable Patrick Duffy considered whether the guarantees of Marriott's employee handbook altered the plaintiff's at-will employment status. The handbook contained a disclaimer stating that "[n]othing in this manual shall be deemed to alter the 'at will' status of associates working at the company or create a contract of employment for any specific period of time." *Id.* at 750. Finding the disclaimer not conspicuous under South Carolina law, Judge Duffy next considered "whether, as a matter of law, the handbook contains a promise that may be the basis of a contract." *Id.* at 755. The employee handbook stated, among other things, that "[t]here will be no discrimination or recrimination against any associate because the associate presents a complaint or problem" and that "[a]n associate who brings . . . a complaint to the attention of the Company in good faith will not be adversely affected as a result of reporting the harassment." *Id.* at 756. Judge Duffy held that because this language "does not create an expectation that employment is guaranteed or that a particular process must be complied with before an employee is terminated," it could not create a contract or otherwise alter the plaintiff's at-will status. *Id.* Similarly, in *Frasier v. Verizon Wireless*, 2008 WL 724037 at *1-2 (D.S.C. March 17, 2008), the Honorable Henry Herlong held as a matter of law that an employee handbook stating that "[a]t Verizon Wireless, everyone should feel comfortable to speak his or her mind" and that "Verizon Wireless prohibits retaliation against employees who, in good faith, submit or participate in the investigation of any complaints" did not alter the plaintiff's at-will employment status.

Plaintiff suggests that this Court follow the precedent of *Greene v. Quest Diagnostics Clinical Laboratories, Inc.*, 455 F. Supp. 2d 483 (D.S.C. 2006). In that case, the Honorable David Norton construed three documents that allegedly modified the plaintiff's at-will employment status. The first document, an employee handbook, contained a disclaimer that the

8

court found to be conspicuous as a matter of law and language outlining a progressive discipline policy that the court found to be permissive rather than mandatory. *Id.* at 491-92. However, the other two documents did not contain disclaimers, and one of the documents stated that "[t]here will be no repercussions to you for having reported in good faith any suspected misconduct or non-compliance." *Id.* at 486. Judge Norton noted that "the South Carolina Supreme Court has clearly stated that when there is a dispute over whether language in a handbook or other document creates a binding promise, particularly in the absence of a disclaimer, that dispute should be resolved by a jury." *Id.* at 492. Accordingly, Judge Norton held that "[b]ecause these two documents did not contain disclaimers and there are two possible, reasonable inferences, a jury should resolve the question of whether they are contracts that altered the employment at-will relationship." *Id.* Judge Norton noted that the South Carolina Supreme Court in *Hessenthaler* had held that a similar non-retaliation statement was merely a "general policy statement" that did not alter the employment at-will relationship, but emphasized that the *Hessenthaler* court made this determination only after finding that the handbook contained a conspicuous disclaimer. *Id.* at 492 n.6.

Although this Court finds the language of Kimberly-Clark's Non-Retaliation Policy to be substantially equivalent to that discussed in *King*, this Court finds that the language of the Non-Retaliation Policy "contains a promise that may be the basis of a contract." *King*, 520 F. Supp. 2d at 755. As in *King*, the language at issue here "does not create an expectation that employment is guaranteed or that a particular process must be complied with before an employee is terminated." *Id.* at 756. However, the Non-Retaliation Policy does create an expectation that employment will not be terminated in retaliation for filing a Code of Conduct complaint. Its language is "definitive in nature, promising specific treatment in specific situations."

*Hessenthaler*, 616 S.E.2d at 698.  Although Defendant maintains that the Non-Retaliation Policy is a "general policy statement" that is neither "mandatory" nor "promissory," this Court finds that its language explicitly promises that employees will not be fired in retaliation for raising Code of Conduct concerns.

Defendant asserts that only language that "create[s] an expectation that employment is guaranteed or that a particular process must be complied with before an employee is terminated" should be found capable of forming a contract.  *King*, 520 F. Supp. 2d at 756.  However, Defendant identifies no general contract principles or public policy considerations supporting this position.  Furthermore, this result is not mandated by *Hessenthaler*, which found handbook language to be unenforceable in contract only after determining that the language was "not specific" and "ma[de] [no] promises regarding disciplinary procedure or termination decisions." *Hessenthaler*, 616 S.E.2d at 699.  This Court discerns no reason why an employer's promise not to terminate an employee for a specific reason, even if the employer may terminate the employee at any time for any other reason, cannot be enforceable in contract.  As the South Carolina Supreme Court has stated, "[i]t is patently unjust to allow an employer to couch a handbook, bulletin or similar material in mandatory terms and then allow him to ignore these very policies as 'a gratuitous non-binding statement of general policy' whenever it works to his advantage." *Small v. Springs Industries, Inc.*, 357 S.E.2d 452, 455 (S.C. 1987).

Because the Kimberly-Clark Code of Conduct contains mandatory language as well as a non-conspicuous disclaimer, it is inherently ambiguous.  Accordingly, this Court cannot determine as a matter of law that the Non-Retaliation Policy did not contractually alter Plaintiff's at-will employment status.

10

B.      **Whether Kimberly-Clark's Non-Retaliation Policy Applies to Plaintiff's Complaint About Mr. Freer**

Defendant further argues that, even assuming that the Non-Retaliation Policy constitutes a binding contract, it does not apply to Plaintiff because by Plaintiff's own admission his complaint about Mr. Freer was not "a complaint under the Code of Conduct."  However, the Code of Conduct itself states that it "cannot possibly answer every question or ethical dilemma" and suggests that "[i]f something does not seem right to you, ask your team leader or one of the other people listed in the Resources section."  ECF No. 24-1 at 82.  Plaintiff's complaint about Mr. Freer's conduct falls within the scope of this language and is therefore protected by the Non-Retaliation Policy.  The fact that Plaintiff did not identify his complaint as a Code of Conduct complaint at the time he made it, or during his deposition, does not alter this conclusion.

C.      **Whether Plaintiff Has Produced Evidence Sufficient to Show that His Employment Was Terminated in Retaliation for His Complaint About Mr. Freer**

Defendant finally argues that even if the Non-Retaliation Policy contractually altered Plaintiff's at-will employment status, summary judgment should still be granted because Plaintiff has not produced evidence sufficient to show that his employment was terminated in retaliation for his complaint against Mr. Freer.  Mr. Freer, Mr. Gallaher, and Ms. Turney-Woolley have all testified that Mr. Freer was not consulted regarding the decision to terminate Plaintiff's employment and in no way participated in the decision.  ECF No. 24-5 at 6; ECF No. 24-3 at 4-5; ECF No. 24-6 at 2-3.  Additionally, Mr. Gallaher and Ms. Turner-Woolley were unaware of any complaint made by Plaintiff against Mr. Freer, although Mr. Gallaher acknowledges that he was aware of a "rift" between Plaintiff and Mr. Freer.  ECF No. 24-3 at 4-5; ECF No. 24-6 at 2-3; ECF No. 29-2 at 11.  Mr. Gallaher first learned of the possible time discrepancies from Tracy

11

Riley, a human resources manager.  ECF No. 24-2 at 3-4.  Mr. Riley was informed of possible

discrepancies by Jimmy Morrison, a Kimberly-Clark maintenance crew leader who did not work

for Plaintiff.  ECF No. 24-4 at 3-4.

Defendant argues that Plaintiff's employment was terminated because of the

discrepancies in his time reporting and his failure to accept responsibility for these discrepancies.

Defendant claims that when Plaintiff was confronted with the discrepancies in his time reporting,

he "attempted to rationalize the discrepancies by claiming he worked many hours that he did not

report and therefore did not get paid for."  ECF No. 24 at 6.  Because "Plaintiff did not offer any

reasonable explanation for the discrepancies in his time, nor did he take any personal

responsibility for the discrepancies," Mr. Gallaher decided that Plaintiff's employment would be

terminated, but that Plaintiff would be allowed to retire.  ECF No. 24-3 at 4.  Mr. Gallaher's

decision was endorsed by Mr. Cross, Mr. Riley, and Ms. Turner-Woolley.  ECF No. 24-2 at 8.

The only evidence that Plaintiff has put forth showing that Mr. Freer was involved is the

fact that Mr. Freer was responsible for approving Plaintiff's time records, as well as Mr. Freer's

alleged foreknowledge of Plaintiff's termination and his gloating at Plaintiff's termination.

Additionally, although Plaintiff states that he "protested his innocence" when confronted about

his time discrepancies, he does not presently argue that his time reporting was accurate or put

forth evidence showing that the alleged discrepancies were in error.  Plaintiff does argue that

those reviewing his time records did not properly take into account the time he worked away

from the plant, although Mr. Gallaher testifies that he consulted Plaintiff's Microsoft Outlook

calendar in addition to his gate entry and exit times.

Although Plaintiff does not purport to have direct evidence of Mr. Freer's involvement in

his termination, he contends that a retaliatory motive may be inferred from the "unreasonable"

and "unfair" process by which his employment was terminated.  Plaintiff also suggests that Mr. Freer's involvement may be inferred from Mr. Freer's comments to Plaintiff on June 2 and June 3, 2009.  However, multiple Kimberly-Clark employees have testified that Mr. Freer played no part in Plaintiff's termination or the investigation leading up to it, and that Mr. Gallaher and Ms. Turner-Woolley had no knowledge of Plaintiff's complaint.  The only Kimberly-Clark employee involved in approving Mr. Gallaher's decision to terminate Plaintiff's employment who had knowledge of Plaintiff's complaint was Mr. Cross.  Although Plaintiff describes feeling "betrayed" when Mr. Cross informed Mr. Freer about the Plaintiff's complaint in Mr. Freer's performance review, Plaintiff has put forth no evidence showing that Mr. Cross was unhappy with Plaintiff because of his complaint or had any motive to fire Plaintiff because of it.  On the contrary, Plaintiff describes Mr. Cross's response to his complaint as concerned and supportive.  Against this evidence, Plaintiff's speculation does not create a triable issue of fact.

Even assuming that, contrary to sworn testimony, Mr. Freer was significantly involved in the investigation resulting in Plaintiff's termination, no reasonable jury could find that Plaintiff's employment was terminated in retaliation for his complaint against Mr. Freer.  Mr. Freer's superior, Mr. Gallaher, was the person who had the power to fire Plaintiff and who chose to do so.  Plaintiff has not explained how or why Mr. Freer would have had the power or influence to persuade Mr. Gallaher to fire Plaintiff based on Mr. Freer's personal grudge.  While Mr. Gallaher was aware of a "rift" between Plaintiff and Mr. Freer, Plaintiff has advanced no plausible reason why this would cause Mr. Gallaher to fabricate a pretextual case for terminating Plaintiff's employment.  Although Plaintiff accuses various Kimberly-Clark employees of having "teamed up" with Mr. Freer, he has made no such allegation regarding Mr. Gallaher.  ECF No. 24-1 at 29.  The uncontroverted evidence shows that Plaintiff's employment was

terminated because of discrepancies in his time reporting.  Because the evidence shows that Plaintiff was forced to retire for a legitimate reason unrelated to his complaint against Mr. Freer, and because there is no significant evidence to support Plaintiff's theory of retaliation, no reasonable jury could find that Plaintiff was forced to retire in retaliation for his complaint against Mr. Freer.

### CONCLUSION

Because Plaintiff has not produced evidence sufficient to show that his employment was terminated in retaliation for his complaint about Mr. Freer, Defendant is entitled to summary judgment.  Defendant's motion for summary judgment is granted.

**IT IS ORDERED.**

s/ Margaret B. Seymour
Margaret B. Seymour
United States District Judge

Columbia, South Carolina
October 28, 2011